UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

- - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

             Plaintiff,

   v.

MARILYN ETHEL HARP,

             Defendant.

_____/

No. 1:26-cr-61

Hon. HALA Y. JARBOU
Chief U.S. District Judge

## PLEA AGREEMENT

This constitutes the plea agreement between Marilyn Ethel Harp and the United States Attorney's Office for the Western District of Michigan. The terms of the agreement are as follows:

1.    Plea to Information. The defendant gives up the right to indictment by a grand jury and agrees to plead guilty to the Felony Information, charging her with bank fraud in violation of Title 18, United States Code, Section 1344(2).

2.    Defendant Understands the Crime. In order for the defendant to be guilty of violating Title 18, United States Code, Section 1344(2), the following must be true: (1) the defendant knowingly executed a scheme to obtain any of the money or funds under the custody or control of a bank by means of false or fraudulent pretenses, representations or promises; (2) the scheme included a material misrepresentation or concealment of a material fact; (3) the defendant had the intent to deceive or cheat someone for the purpose of either causing a financial loss to another or bringing about a

financial gain to herself; (4) the bank was federally insured. The defendant is pleading guilty because she is guilty of the charge described above.

3.      Defendant Understands the Penalty. The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1344(2) is the following:  30 years of imprisonment; a five -year period of supervised release; a fine of $1,000,000, and a mandatory special assessment of $100.

4.      Assessments, Restitution, Other Criminal Monetary Penalties, and Financial Cooperation.

    a.      Assessment. The defendant agrees to pay the special assessment on the day of sentencing.

    b.      Restitution. The defendant acknowledges the Court will order restitution as required by law. Pursuant to Title 18 U.S.C. Sections 3663(a)(3) and 3663A(3) and (c)(2), the defendant agrees to pay restitution for losses to all victims, including victims of the count of conviction, to include Ionia Township, and victims of uncharged relevant conduct in which the defendant has been involved.  The parties currently believe that the applicable amount of restitution payable to Ionia Township is approximately $747,025 and recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing. The Court will determine the final amount at sentencing.  The defendant agrees to pay restitution to the fullest extent possible at or before the time of sentencing by submitting funds to the Clerk of Court.

c.      Financial Cooperation. The defendant also:

i.   agrees to fully and truthfully complete and return the financial disclosure form the U.S. Attorney's Office provides, including any waivers, consents, or releases requested to access records to verify the financial information within 30 days of the date of this plea agreement;

ii.   agrees that any restitution or other criminal monetary penalties imposed by the Court shall be due and payable immediately, any payment plan set by the Court represents a minimum payment obligation, and the United States may immediately enforce the judgment in full; and

iii.   agrees that prior to sentencing and until restitution is paid in full, she will not sell or give away any asset worth $5,000 or more, without first notifying the U.S. Attorney's Office. Defendant also agrees to notify the U.S. Attorney's Office of any proceeding, such as foreclosure or divorce, that may impact Defendant's financial condition.

5.      Supervised Release Defined.  Supervised release is a period of time following imprisonment during which the defendant will be subject to various restrictions and requirements.  The defendant understands that if she violates one or more of the conditions of any supervised release imposed, she may be returned to prison for all or part of the term of supervised release, which could result in Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

6.      Asset Forfeiture and Financial Accountability. The defendant agrees to disclose to law enforcement officials the whereabouts of, defendant's ownership interest

in, and all other information known to the defendant about, all assets, money or property of any kind, derived from or acquired as a result of, or used to facilitate the commission of her illegal activities. The defendant agrees to assist and cooperate in the recovery of all monies, property, or assets derived from, or acquired as a result of the offense charged in the Information. The defendant further agrees to forfeit all rights, title, and interest in and to such items. The defendant agrees to forfeit to the United States the sum of $747,025.27, which represents the proceeds she obtained as a result of her commission of the offense charged in the Information, less any funds or assets lawfully seized and subject to a final order of forfeiture. The defendant and the government agree that this sum of $747,025.27 shall receive a commensurate reduction by any amount finally forfeited under paragraphs 7 and 8 below.

7.    The defendant agrees to fully cooperate with the federal government in the seizure and forfeiture of assets under Title 18, United States Code, Section 982(a)(2)(A), which includes, among other things, any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such offense charged in the Information. Specifically, the defendant agrees to forfeit to the United States:

a.    $643,852.38 seized from LPL Financial joint brokerage account ending 4839 held in the name of Marilyn Harp and Michael Harp ("full seized contents of LPL Financial account ending 4839"); and

b.    $3,846.36 seized from Michigan One Community Credit Union checking account ending in 2605, member number 27226, held in the name of

Marilyn Harp and Michael Harp ("Michigan One account ending 2605, member number 27226")

collectively totaling $647,698.74 and hereafter referred to as "the Subject Property", which is any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the conduct charged in the Information.  The defendant admits that the Subject Property is subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(2)(A).  The defendant consents to the entry of a preliminary order of forfeiture concerning the Subject Property at or before the time of sentencing.

8.      The defendant also consents to the forfeiture of substitute property pursuant to 21 U.S.C. § 853(p).  The defendant acknowledges that the proceeds she obtained, directly or indirectly from bank fraud, were taken by her as part of the scheme to defraud alleged in the Information. As such, the defendant agrees that not all of her criminal proceeds can be located upon the exercise of due diligence. Specifically, the defendant stipulates and agrees that the United States is also entitled to forfeit any remaining funds from the Subject Property not otherwise directly forfeited under paragraph 7 above as substitute property pursuant to Title 18 U.S.C. 982(b)(1); 21 U.S.C. 853(p): The defendant stipulates and agrees to a preliminary order of forfeiture with respect to the substitute assets forfeiting them to the United States. The defendant further agrees that upon entry of a preliminary order of forfeiture, the United States may seize and/or restrain the substitute assets without further court process.

9.      The defendant waives further notice of any forfeiture proceedings. The defendant stipulates and agrees to testify truthfully in any forfeiture action. The

5

defendant stipulates and agrees to execute all forms and pleadings necessary to effectuate such forfeiture. The defendant stipulates and agrees to comply with all requests made by the United States that are made in order to pass clear title of the assets to the United States. The defendant agrees not to assist any other individual in contesting the forfeiture of the substitute assets described above and agrees that there is reasonable cause to seize such items. The defendant also agrees to prevent the disbursement or alienation of any and all assets described above if such assets are within her direct or indirect control.

The parties further agree that the defendant should receive credit against the forfeiture money judgment sought by the United States for all funds she pays as restitution with the Clerk of the Court prior to the time of sentencing. Accordingly, for all funds the defendant deposits with the Clerk of the Court as restitution prior to sentencing, the Government will move for a commensurate reduction in the defendant's forfeiture money judgment.

The U.S. Attorney's Office agrees to submit a restoration request to the Department of Justice Money Laundering, Narcotics and Forfeiture Section (MNF) for the application of any proceeds from such forfeited property towards the defendant's restitution order. The defendant acknowledges that the Department of Justice Money Laundering, Narcotics and Forfeiture Section (MNF) has the sole authority to grant or deny the restoration request and that the submission of such a request by the U.S. Attorney's Office does not guarantee that such request will be granted.

10. <u>Factual Basis of Guilt</u>. The defendant and the U.S. Attorney's Office agree and stipulate to the following statement of facts which need not be proven at the time of

the plea or sentencing:  Between 1984 and 2025, the defendant served as the treasurer of Ionia Township, a unit of local government located inside Ionia County, Michigan.  This position gave her the authority to collect property taxes from citizens living inside the Township and to deposit them into an account the Township held at Mercantile Bank of Michigan, a financial institution that at all times relevant to this case was insured by the Federal Deposit Insurance Corporation, as was its predecessor, FirstBank (hereafter, the parties will refer to this as the "Tax Account.")  The defendant was obligated to use the funds in the Tax Account only for purposes approved by the Township.  Beginning no later than 2014 and continuing through 2025, the defendant violated this obligation by writing over 80 checks from the Tax Account to pay down balances on her personal credit cards.  She concealed these material actions from the Township and Mercantile Bank and took steps to deceive them by noting that the checks were issued to pay legitimate Township expenses when they were not.  When others began to suspect that she was perpetrating a fraud scheme, the defendant altered and destroyed Township records to prevent her discovery.  The defendant's fraud yielded her $747,025.27, part of which she used to build a vacation home.  She sold this property when her fraudulent activity was discovered and deposited some of the proceeds of the sale into the LPL Financial account specified in the Forfeiture Allegation of the Felony Information.

11.    Acceptance of Responsibility.  The U.S. Attorney's Office agrees not to oppose the defendant's request for a two-level reduction of her offense level for acceptance of responsibility under Section 3E1.1(a) of the Sentencing Guidelines. However, the U.S. Attorney's Office reserves the right to object to the defendant's

request if it subsequently learns of conduct by her that is inconsistent with the criteria set forth in the Commentary to Section 3E1.1.  Should the Court grant a two-level reduction as provided herein, the Government will move the Court to grant an additional one-level reduction if the adjusted offense level is 16 or greater pursuant to Section 3E1.1(b).

12.    The Sentencing Guidelines. Defendant understands that, although the United States Sentencing Guidelines (the "Guidelines") are not mandatory, the Court must consult the Guidelines and take them into account when sentencing the defendant. The defendant understands that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing.  The defendant understands that she and her attorney will have the opportunity to review the presentence report and to make objections, suggestions, and recommendations concerning the calculation of the Guideline range and the sentence to be imposed.  The defendant further understands that the Court shall make the final determination of the Guideline range that applies in this case, and may impose a sentence within, above, or below the Guideline range, subject to the statutory maximum penalty described elsewhere in this Agreement. The defendant further understands that disagreement with the Guideline range or sentence shall not constitute a basis for withdrawal of the plea.

13.    There is No Agreement About the Final Sentencing Guidelines Range. The defendant and the U.S. Attorney's Office have no agreement as to the applicable Sentencing Guidelines factors or the appropriate guideline range.  Both parties reserve

the right to seek any sentence within the statutory maximum, and to argue for any criminal history category and score, offense level, specific offense characteristics, adjustments and variances.

14.    Waiver of Constitutional Rights. By pleading guilty, the defendant gives up the right to persist in a plea of not guilty and the right to a speedy and public trial by jury or by the Court. As a result of the defendant's guilty plea, there will be no trial. At any trial, whether by jury or by the Court, the defendant would have had the following rights:

a.    The right to the assistance of counsel, including, if the defendant could not afford an attorney, the right to have the Court appoint an attorney to represent Defendant.

b.    The right to be presumed innocent and to have the burden of proof placed on the Government to prove the defendant guilty beyond a reasonable doubt.

c.    The right to confront and cross-examine witnesses against her.

d.    The right, if the defendant wished, to testify on her own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

e.    The right not to be compelled to testify, and, if the defendant chose not to testify or present evidence, to have that choice not be used against her.

15.    By pleading guilty, the defendant also gives up any and all rights to pursue in this Court or on appeal any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

16.    Waiver of Appellate Rights. The defendant gives up her right to directly appeal her conviction, sentence, or any other matter relating to this prosecution on any ground, except as to claims that the sentence exceeds the statutory maximum.

17.    This Agreement is Limited to the Parties. This agreement is limited to the U.S. Attorney's Office for the Western District of Michigan, and cannot bind any other federal, state or local prosecuting, administrative or regulatory authority. This agreement applies only to crimes committed by the defendant. This agreement does not apply to or preclude any past, present, or future forfeiture or civil actions.

18.    FOIA Requests. The defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

19.    Hyde Waiver. The defendant acknowledges, by her voluntary admission of guilt, that the position of the U.S. Attorney's Office in this case is not vexatious, frivolous, or in bad faith, and she hereby disclaims and waives any right to make any claim for attorney fees.

20.    Consequences of Breach. If the defendant breaches any provision of this agreement, including any promise of cooperation, whether before or after sentencing, the United States shall have the right to terminate this agreement, or deny any or all benefits to which she would otherwise be entitled under the terms of this agreement. In the event that the United States elects to terminate this agreement, the agreement shall

be considered null and void, and the parties shall return to the same position they were in prior to the execution of this agreement, as though no agreement ever existed.  In such an event, the defendant shall remain liable for prosecution on all original charges, and the United States shall be free to bring such additional charges as the law and facts warrant.  The defendant further agrees to waive and forever give up her right to raise any claim that such a prosecution is time-barred if the prosecution is brought within one (1) year of the breach that gives rise to the termination of this agreement.

21.    This is the Complete Agreement.  This agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the complete understanding between the parties.  No other promises have been made, nor may any additional agreements, understandings or conditions be entered into unless in a writing signed by all parties or on the record in open court.

TIMOTHY VERHEY
United States Attorney

7/28/26
Date

11

I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

_____         _____
Date                              MARILYN ETHEL HARP
                                  Defendant


I am Marilyn Ethel Harp's attorney. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of her rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

7/28/2026                         _____
Date                              TERESE A. PALETTA
                                  Attorney for Defendant

12