**UNITED STATES DISTRICT COURT**
**FOR THE**
**WESTERN DISTRICT OF MICHIGAN**

UNITED STATES OF AMERICA,

Plaintiff,

v

MARILYN ETHEL HARP,

Defendant.

Case No. 0646 1:26CR00061-001

Honorable Hala Y. Jarbou

Assistant U.S. Attorney
Timothy P. VerHey
Daniel T. McGraw
330 Ionia Ave NW, Ste 501
Grand Rapids, MI 49503
(616)456-2404

Terese A. Paletta (P41109)
PETERSON PALETTA BALICE, PLC
Attorneys for Defendant
5510 Cascade Road SE, Suite 220
Grand Rapids, Michigan 49546
(616) 957-3540

**MOTION FOR VARIANCE AND SENTENCING MEMORANDUM**

NOW COMES the Defendant, Marilyn Harp, by and through her attorneys, Peterson Paletta, PLC, and respectfully moves this Court to grant a variance when sentencing her for the reasons set forth in her Sentencing Memorandum.

Dated: 11/2/2026

Terese Paletta
Attorneys for Defendant Marilyn Harp

**CASE NO. 1:26CR00061-001**

---

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE**
**WESTERN DISTRICT OF MICHIGAN**

---

**UNITED STATES OF AMERICA**

*Plaintiff*

v

**MARILYN ETHEL HARP**

*Defendant*

---

Assistant U.S. Attorney
Timothy P. VerHey
Daniel T. McGraw
330 Ionia Ave NW, Ste 501
Grand Rapids, MI 49503
(616)456-2404

Terese A. Paletta (P41109)
PETERSON PALETTA BALICE, PLC
Attorneys for Defendant
5510 Cascade Road SE, Suite 220
Grand Rapids, Michigan 49546
(616) 957-3540

---

**MOTION FOR VARIANCE AND SENTENCING MEMORANDUM**

---

**Prepared for:** The Honorable Hala Y. Jarbou
Chief U.S. District Judge

**Prepared by:** Defense Counsel
Terese A. Paletta
5510 Cascade Rd SE, Ste 220
Grand Rapids, Michigan, 49546
(616)957-3540
tap@ppblawyers.com

**UNITED STATES DISTRICT COURT**
**FOR THE**
**WESTERN DISTRICT OF MICHIGAN**

---

UNITED STATES OF AMERICA,

Plaintiff,

v

MARILYN ETHEL HARP,

Defendant.

Case No. 0646 1:26CR00061-001

Honorable Hala Y. Jarbou

---

Assistant U.S. Attorney
Timothy P. VerHey
Daniel T. McGraw
330 Ionia Ave NW, Ste 501
Grand Rapids, MI 49503
(616)456-2404

Terese A. Paletta (P41109)
PETERSON PALETTA BALICE, PLC
Attorneys for Defendant
5510 Cascade Road SE, Suite 220
Grand Rapids, Michigan 49546
(616) 957-3540

---

## MOTION FOR VARIANCE AND SENTENCING MEMORANDUM

---

In July of 2025, Marilyn Harp resigned her position as Ionia Township Treasurer. She had been serving in that capacity since 1982. An audit of the township financial accounts revealed that there were discrepancies in the accounting and missing funds. Rather than put the township and its constituency through protracted forensics, Marilyn resigned.

Marilyn Harp has no criminal record of any kind. She has been a dutiful wife, mother, grandmother and member of the Ionia community her entire life. Unfortunately, in her pursuit of providing the best possible life for her family, Marilyn was tempted and then found herself, in 2014, accessing funds entrusted to her for the

township and converting them to pay credit card bills that she used to support her family.

In 2013 she took tax money paid to the township to pay off some credit card debt. It went unnoticed. As time went on, she continued the deception and the longer the discrepancy went unnoticed, the more she relied upon the funds to support her family. Marilyn readily admits her actions and makes no excuses for her weakness.

Marilyn does dispute some of the non-financial facts reported by probation. The purpose of this motion however is to request variance from the recommended sentencing range.

**DISCREPANCIES**

**Page 5, paragraph 10.** Ms. Harp contests the summary characterization that the funds to which she availed herself were "utilized to pay for luxury items". Rather, it is more accurate to explain that Ms. Harp commingled the funds with her family bills that extended beyond her means.

**Page 6, paragraph 11.** It is inaccurate to suggest that Ms. Harp was responsible for an unexplained "disappearance" of a township computer. It is obvious from the mere length of time that Ms. Harp's actions went unnoticed that Ionia Township was less than diligent in record keeping. Ms. Harp performed her duties for the township from her home. The reality of the computer situation as it applied to Marilyn Harp's role as township treasured is that she never used a laptop. As for a desk top computer, Ms. Harp obtained authorization of the township supervisor to take it for repairs and when it was determined to be unrepairable, she obtained verbal authorization to get a new one. The new computer was voluntarily turned over to the

township in July 2025, as were all the paper records that Ms. Harp retained as treasurer at her home upon request of the township attorney in July 2025.

**Page 9, paragraph 15.** Ms. Harp did obtain permission to replace the former desktop she used prior to the investigation commencing. Ms. Harp also disputes that she paid for her grandchild's college and gifted a vehicle to her grandchild. Ms. Harp's grandchild obtained a full scholarship to attend college. Again, the township funds were commingled with the Harp's household accounts and the Harp's did indeed gift spending money to the college aged grandchild. The vehicle was NOT funded by Ms. Harp, but rather the vehicle was purchased by the grandchild's parents and still is subject to a standard car loan balance.

**Page 10, paragraph 19.** As treasurer, Ms. Harp was not responsible for providing minutes of township meetings. This is the function of the clerk. Any suggestion that the lack of meeting minutes was part of Ms. Harp's deception or responsibility is false.

In summary, Ms. Harp admits to the regrettable actions that are hers alone. However, lax operating practices of Ionia township are not the sole responsibility of Marilyn Harp. This is not brought to the attention of the court to provide an excuse, but rather a context in which to understand how this became the proverbial snowball rolling downhill to which Ms. Harp lost control.

Likewise with respect to the in-retrospect character aspersions. It is understandable that the Ionia Township officials feel betrayed and are angry, however the attached letters portray the true character of Marilyn Harp. Most people who really know Marilyn Harp stand by her, even after revelation of this unconscionable act, due to her many many years of family and community support otherwise.

Also absent from the Pre-Sentence Report is that Marilyn Harp has made full restitution to the government.

**DISCUSSION**

Under § 3553(a), a federal court must consider:

1. The offense and the defendant: The nature and circumstances of the crime, and the defendant's history and personal characteristics.
2. The purposes of sentencing: The need for the sentence to:
    - Reflect the seriousness of the offense, promote respect for the law, and provide just punishment.
    - Deter future criminal conduct.
    - Protect the public from further crimes.
    - Provide needed educational or vocational training, medical care, or other correctional treatment.
3. Available sentences: The kinds of sentences available to the court.
4. The sentencing guidelines: The applicable federal Sentencing Guidelines and relevant policy statements.
5. Avoiding unwarranted disparities: The need to avoid unjustified differences between sentences imposed on similarly situated defendants.
6. Restitution: The need to provide restitution to victims of the offense.

**The offense and the Defendant.** As stated above, Marilyn Harp takes full responsibility for her role in this crime. The nature of the crime was indeed a significant violation of trust that had been placed in her by her community. An entire life of serving and contributing to that community was wiped out by what turned out to become a

compulsion, not unlike gambling, where the act was not uncovered and it became easier and easier to be in denial as to its nature. Otherwise, Ms. Harp has not only no criminal record, but no actions that suggest that she was anything other than a loving wife, mother, grandmother and neighbor.

**The purposes of sentencing.** This is indeed a serious offense and a violation of public trust. There is no chance that Marilyn Harp will engage in future conduct of this sort or any other afoul of the law. The public is not at risk of further crimes, and as stated above, full restitution has been made to make the township and its constituents whole. At 74 years of age, Marilyn Harp is not a continuing danger to the public.

**Available Sentences.** A home confinement with supervised release is possible. 18 USC sec 3553(a)(3). This would accomplish the punitive purpose of sentencing. Ms. Harp's husband is diabetic and in extremely poor health. She is sole caretaker. Ms. Harp's health is not the best either. She suffers from a cirrhosis of the liver and a multitude of age related ailments such as gall bladder, high blood pressure, digestive issues and anxiety. Incarceration is sure to exacerbate these conditions for both Ms. Harp and her husband and the interests of justice can be served with home confinement and then continued supervision. If Ms. Harp was denying her responsibility or blaming others for her actions, incarceration may provide the period of reflection or character adjustment necessary. However, Ms. Harp was cooperative from the beginning of the investigation and both on her own and through counseling, has taken account of the character flaws that led her to so violate the other good aspects of her life.

**The sentencing guidelines.** The score that places Ms. Harp in an incarceration range on the sentencing guidelines is the 14 points for specific offense characteristics. But for the high amount of monetary misappropriation, the sentencing

guidelines would be much lower. Again, not only has Ms. Harp taken full responsibility as indicated by the -2 for Acceptance of Responsibility, she has made full restitution.

**Avoiding unwarranted disparities.** This factor is hard to gauge and it is understood that this is what the sentencing guidelines in meant to address. In this matter, we have a 74 year old woman that found herself engaged in a protracted practice of availing herself of funds. It went unnoticed and the longer it did, the easier it became for her to rely upon them. In a most unhealthy rationalization, at the time, she deceived herself by the desire to provide for her family. She accepts total responsibility for the gross lapse and fraud upon her community and herself. There is literally no scenario in which she is tempted or able to do anything like this again.

**Restitution.** Restitution has been paid in full and without dispute, challenge or reduction to the amount the government requested.

In addition to the factors above, Ms. Harp reiterates the details stated above with respect to her poor health, and her need to care for her family.

## CONCLUSION

In conclusion, Ms. Harp respectfully requests that this Honorable Court render a sentence that is sufficient, but not greater than necessary to accomplish the purposes of sentencing. The defense requests that the court grant the Motion for Variance and impose a sentence that includes no incarceration which is while below the advisory guideline range, would nevertheless more than sufficiently satisfy all the purposes of sentencing.

Dated: 11/2/2026

Respectfully submitted,

______________________________

Terese Paletta
PETERSON PALETTA BALICE, PLC
Attorneys for Defendant Marilyn Harp
5510 Cascade Rd. SE
Grand Rapids, MI 49546
(616)957-3540
tap@ppblawyers.com

Outlook

---

**Character Reference for Marilyn Harp**

---

**From** Aaron Goodnough <agoodytwo@yahoo.com>
**Date** Tue 9/15/2026 9:08 PM
**To** Sam Conrad <smc@ppblawyers.com>

Let me know that this came across OK - thank you,

---

September 15, 2026

Rebecca Howell
Chief U.S. Probation Officer
101 Federal Building
110 Michigan Ave NW
Grand Rapids, MI 49503

Dear Chief Probation Officer Howell:

My name is Aaron Goodnough, and I am writing on behalf of Marilyn Harp. I have known Marilyn for almost seven years and consider her part of our family. In fact, my kids simply know her as "Meemaw."

Marilyn is one of the sweetest and most caring people I know. Her family means everything to her, and she is an incredibly loving mother and grandmother. She is someone who consistently puts others first and is always willing to help or support the people around her.

I coached her granddaughter for several years, and Marilyn's kindness extended well beyond her own family. We traveled many miles together for basketball, and it was rare for her not to be courtside, cheering on not only her granddaughter, but every player on the team. She cared about those kids and their families as if they were her own.

That is why I was completely stunned when I learned about the circumstances that brought Marilyn to this point. What has happened is so far outside of the person I have known for nearly seven years that it has been difficult for me to fully grasp. I do not say that to excuse or minimize the seriousness of the situation, but simply to provide an honest picture of the person I have come to know and love.

I believe this experience has already had a profound impact on Marilyn, and I sincerely believe she understands the seriousness of the situation. This moment does not define the person she has been throughout her life.

I respectfully ask that Marilyn's character, her devotion to her family, and the person she has consistently been to so many people be considered when determining an appropriate recommendation or outcome. If legally appropriate, I hope consideration can be given to an alternative to incarceration that still provides accountability while allowing Marilyn to remain with the family that loves and depends upon her.

Thank you for taking the time to consider my perspective on Marilyn's behalf.

Respectfully,

Aaron Goodnough
Clarkston High School / PR1DE Basketball
(248) 872-6930
agoodytwo@yahoo.com

To whom it may concern,

My name is Brian Deurloo and I am writing this letter on behalf of my mother in law Marilyn Harp. If you are reading this letter then I am certain you understand the context of what I have to speak about, explaining from my perspective who she is.

I first met Marilyn back in 1994 when I started dating her daughter Jill, so I've been around her in numerous settings for these last thirty two years. Marilyn has been very good to me, all through my younger life striving to make it through college on my quest to become a mechanical engineer. Marilyn has a tremendously large heart when it comes to other people. I've witnessed on countless occasions her desire to serve others ahead of herself. This is not something that I just say, it's been who she is and how she's lived her life ever since I met her.

One example I can give to help paint this picture is how she supported her dad at the end of his time here on earth. He was quite sick, but Marilyn refused to leave him to hospice care. She stayed with him every day, taking care of his every need. She could have easily let others do this work, but Marilyn was dedicated to make sure he had everything he needed until God called him home. This is just who Marilyn is, always wanting to serve others and make sure they have what they need.

Marilyn acted in this same manner with her mother when her time came to pass, and she helped her older sister as well when she gave up her fight to cancer. This is just who Marilyn is. She has always been this way in my eyes. This is why what she has been accused of is so hard for me to understand. But no matter what, when the dust settles I would bet my life on one thing. Marilyn Harp would give up anything to help other people if they needed it. She's helped me into who I became, she raised two successful daughters, and she's been married to the same man for over 55 years. That is not an accident, it's a testament to someone's character. This is how I see my mother in law Marilyn, and I hope others who will surely play a role in what's to come for her sentencing will also see this same thing. Marilyn is a good woman, and places others ahead of herself and if you look closely you too will see these attributes.

Thank you for your consideration.

Brian J. Deurloo

August 15, 2026

To whom this letter may concern:

In the 30 plus years that I have known Marilyn Harp, she has shown herself to be compassionate, kind, and a loyal person. We are all capable of falling to a temptation. Marilyn is no different. She has many positive characteristics that many people have witnessed.

Her ability to show compassion has been shown through accepting a young man whose parents were involved with substance abuse issues. He just became part of the family. She had him over for family dinners and attended his important events. Her compassion is something that sets her apart from others.

Marilyn shows loyalty to people. Her friend was diagnosed with a form of cancer that is devastating. She supported her and stood with her as she fought to battle and live and laughed through it. Cancer is a horrible diagnosis, and she was willing to be a loyal support for her friend.

Her kindness toward others is genuine. She is always willing to accept a person who is standing alone to make them feel welcome. This small characteristic sets her apart from others. She is willing to include and be a lighthouse in the middle of a stormy setting.

Marilyn is a formidable person with characteristics of compassion, loyalty, and kindness.

Sincerely,

Julie Reisbig
6433 Rickert Rd.
Saranac Mi.48881
616-240-7695

To Whom It May Concern,

I have known Marilyn for many years. She was a client of mine, and throughout the years I have always known her to be respectful, kind, humble, and caring.

Marilyn would often bring me her granddaughters' gently used clothes for my daughter. At the time, I was a single mom and struggling financially, and she knew that those things could really help us. She never made me feel ashamed or less than. She simply helped because that is the kind of person she is.

I understand that Marilyn made a wrong decision and that she has to face the consequences of her actions. I am not writing this letter to excuse what happened. I also understand the seriousness of the situation because my own sister went to prison for something similar. Because of that, I know that people can make mistakes and sometimes situations can get completely out of control.

Even knowing what has happened, I have continued to show Marilyn love and compassion. I believe people are more than the worst decision they have ever made. I have seen the good in Marilyn over the many years I have known her, and I believe her heart is good.

Only God truly knows a person's heart, and I believe Marilyn deserves the opportunity to take responsibility, learn from this experience, and move forward.

I am grateful for the kindness Marilyn has shown me and my family over the years, and I hope that her character, her compassion, and the person I have known her to be will also be taken into consideration.

Sincerely,

Kelli Newenhouse

Kelli Newenhouse

LMT, Holistic Health Coach

Cloud 9 Website

Like us on Facebook

Stanwood L. Krycinski
611 Gregmark St.
Ionia, MI 48846
517-647-4770

August 6, 2026

To Whom It May Concern,

I am writing this letter in support of my sister-in-law, Marilyn Harp, who is currently facing federal charges. I understand the seriousness of her situation, and I appreciate the opportunity to share my perspective on her character and the important role she has played in our family.

Over the years, I have known Marilyn to be a dependable, compassionate, and selfless individual. She has been instrumental in helping me during times when I required assistance with my healthcare needs. Especially a few years back when she saved my life by finding me in a very severe state and ended up being placed on a ventilator, saving my life. Her support was consistent and heartfelt, and she always ensured I had what I needed to manage my health and wellbeing.

Additionally, when my wife (Marilyn's sister) was battling cancer, Marilyn was a vital source of strength, care, and stability. She assisted with transportation, daily tasks, emotional support, and the overwhelming responsibilities that come with serious illness. Her dedication during this difficult period demonstrated her true character—reliable, caring, and committed to helping others through hardship. I have also seen her care for her father, mother, and brother when they were all facing serious medical problems.

Her commitment to our family is evident in the way she supports loved ones, helps maintain stability, and contributes to a positive and respectful environment. She is the type of person who steps up when others are struggling, and her presence has often made challenging situations more manageable. These qualities reflect the depth of her character and the importance she places on loyalty, support, and family connections.

While I understand the gravity of the charges she is facing, these circumstances do not reflect the person I have known. She has shown remorse and a sincere willingness to comply with all expectations and responsibilities moving forward. I believe she can meet the requirements of probation and continue to make positive progress with the support of her family.

Our family stands ready to support her fully providing stability, encouragement, accountability, and a strong network to help ensure her success.

Thank you for taking the time to consider my perspective. If any additional information is needed, I would be glad to provide it.

Sincerely,

Stanwood L. Krycinski

Dear Honorable Judge,

I am writing to respectfully ask the Court to consider my life, my character, my health, and the circumstances that led me to make a decision I deeply regret. I want to begin by stating clearly that I accept full responsibility for my actions. I understand that embezzlement and bank fraud are serious offenses, and I know that what I did was wrong. I am not writing this letter to excuse my behavior or minimize the seriousness of my actions. I made a devastating mistake during one of the most difficult periods of my life, and I regret deeply that I did not find the courage to ask for help when I needed it most.

I am 74 years old and have never previously been involved in any criminal activity. For more than 30 years, I worked for the public school system, and for over 40 years I served my township. My life has always been centered around family, hard work, loyalty, and supporting the community I care about.

Throughout my life, I have tried to be a dependable, caring person. I come from a supportive, well-respected family, and being there for my loved ones has always been an important part of who I am. I have two daughters and three grandchildren who mean the world to me. I have always done my best to support them in every way I could.

Much of my life has also been devoted to caring for others. I cared for both of my parents during the final stages of their lives, as well as my sister and sister-in-law. I supported my children through their health challenges, and I stood by my brother and brother-in-law when they needed me. Helping people has always been something I felt called to do. I also volunteered my time at the Ionia Moose, assisting with turkey dinners, funerals, and community events. To me, these were not extraordinary acts—just what you do when someone needs help.

This leads me to why I feel ashamed. During an extremely difficult period in my life, I did not live up to the values I have always tried to follow. I was struggling with my mental health and found myself in a situation where I desperately needed support but did not know how to ask for it or who I could turn to. Instead of reaching out, I made a terrible decision. I was too afraid, too overwhelmed by pride and embarrassment—to seek the help I needed.

I know that these circumstances do not excuse my actions, and I do not expect them to. I take full responsibility for the choices I made. I simply ask the Court to understand that this offense does not reflect the person I have been throughout my 74 years of life. I made a serious mistake, and I am truly sorry.

I am also facing significant health concerns. Alongside daily mental-health struggles, I am currently undergoing additional medical testing after recent findings of cysts or tumors on

my liver. I do not yet know what these results will mean for my future, and the uncertainty has been frightening. At my age, these medical challenges are particularly difficult to face.

For these reasons, I respectfully ask the Court to consider probation and home confinement as an alternative to incarceration. I believe I would be far more successful under supervision while remaining at home with my family. Their support provides me with stability, accountability, and emotional strength—especially as I continue to manage my mental-health needs and undergo medical testing and treatment.

I am willing to comply fully with any and all conditions the Court imposes. I will adhere to all probation requirements, continue attending counseling and mental-health treatment, follow all medical testing and recommendations, and meet every obligation the Court determines appropriate.

I understand the need for accountability, and I am not asking the Court to overlook what I have done. I am asking for the opportunity to take responsibility in a way that allows me to remain at home, receive necessary medical and mental-health care, and continue to have the support of my family while still being supervised and held accountable.

I cannot undo my mistake. What I *can* do is learn from it, accept the consequences, and ensure that nothing like this ever happens again. I want to spend the years I have left making things right, being present for my family, following God's word, contributing to my community where I can, and showing—through my actions—that this one terrible decision does not define the entirety of my life or who I truly am.

I humbly ask the Court to consider the whole person before you: my age, my lack of criminal history, my decades of work and service, my family responsibilities, my history of caring for others, my mental-health struggles, my current medical issues, and my sincere remorse.

Thank you, Your Honor, for taking the time to read my letter and consider my circumstances. I am deeply sorry for what I have done and respectfully ask for your compassion and consideration.

Respectfully,

Marilyn Harp

Marilyn E. Harp

To Whom It May Concern,

I am writing this letter in support of my mother-in-law, Marilyn Harp who is currently involved in federal proceedings. I understand the seriousness of her situation, and I appreciate the opportunity to provide perspective on her character, history, and the positive role she has played in our family and community.

I have known Marilyn Harp for thirty plus years, and during this time, I have seen her consistently demonstrate integrity, responsibility, and genuine care for others. She has always been someone we could depend on—whether supporting family members during difficult times, helping with childcare, or offering guidance when it was needed. Her compassion and commitment to her family have been defining traits.

I recognize that the current charges are significant, but I firmly believe that they do not represent the person I have come to know. She has expressed sincere remorse for the situation and has shown a clear willingness to comply with all requirements and expectations set before her. I am confident that, if given the opportunity, she will meet probation obligations responsibly and continue working toward stability and positive growth.

Our family is prepared to support her fully as she moves forward. We can provide a stable environment, transportation, accountability, and emotional support to help ensure she is successful in meeting all terms placed upon her. She is not facing this situation alone, and we will stand with her every step of the way.

Thank you for taking the time to consider this letter. If you need any additional information or clarification, I would be glad to provide it.

Sincerely,

Griff B. Lamphere

Outlook

---

**Fwd: Letter**

---

**From** Terese Paletta <tap@ppblawyers.com>
**Date** Mon 8/3/2026 12:28 PM
**To** Sam Conrad <smc@ppblawyers.com>

Another letter for Marilyn. Thanks

Begin forwarded message:

**From:** "Briggs, Gailene (DTMB)" <BriggsG1@michigan.gov>
**Subject: Letter**
**Date:** August 3, 2026 at 7:54:31 AM EDT
**To:** "tap@ppblawyers.com" <tap@ppblawyers.com>

To Whom It May Concern,
I would like to share my experience with the Marilyn Harp I know. She is always willing to help others and consistently participates in our fundraising efforts. As a member of the Women of the Moose, I am involved in many community events throughout the year. I personally lead our annual Cancer Benefit for a community member, as well as our yearly Turkey Dinner. For many years, Marilyn has been right by my side during these events. Her willingness to step in wherever needed has played a big part in their success.
Marilyn is my lead person for cleanup during the Turkey Dinner. This event lasts an entire week, and she is there every single day, doing whatever she can to support the lodge.
Our Cancer Benefit has grown tremendously, and over the past three years we have raised $14,000 each year for our recipient in a single night—through our dinner, pumpkin roll sales, live and silent auctions, and donations. Marilyn is always there for this event as well, helping with preparation, serving, cleanup, and anything else needed throughout the day.
You could not find a more dedicated volunteer. She has been my right-hand person for many years, and I cannot say enough about how helpful, supportive, and dependable she is—not only as a volunteer, but as a friend.

Gailene Briggs
State Administrative Manager – Operations
State of Michigan – DTMB – CSS - Field Services
Operations Center - 1st Floor, H K.5 2.5, SE Corner
7285 Parsons Drive, Dimondale, MI 48821
Cell 517-331-2896
briggsg1@michigan.gov
DTMB
HELP. CONNECT. SOLVE.

August 28, 2026

To Whom It May Concern:

I am writing on behalf of Marilyn Harp, whom I have had the privilege of knowing for most of my life. I ask that you consider this letter as you weigh her character in this matter.

I first came to know Marilyn when I was in high school and played on the tennis team with her daughter. Marilyn was our team parent, and she was always there — supportive of not just her daughter, but of every girl on that team. She even hosted our end-of-season banquet, opening her home to a group of teenagers and making sure we felt celebrated for our season. That kind of generosity, given freely and without expectation of anything in return, is something I have never forgotten.

Years later, our paths crossed again in a very different setting. I became an elementary school teacher, and Marilyn was our school secretary. Ours was a school serving a student population with very low socioeconomic status — more than 90% of our students received free lunch. Day in and day out, I watched Marilyn treat every one of those children, and their families, with warmth, patience, and genuine care. She was the person who kept our school running — the one staff and students alike could count on to handle whatever came through the door with kindness and competence. In a building where so many children needed extra support and reassurance, Marilyn quietly provided it, every single day.

Since her retirement, Marilyn and I have remained friends, along with her daughters and grandchildren. If there is one thing anyone who knows Marilyn will tell you, it is that her family comes first, always. I have never known her to miss a sporting event, a concert, a recital, or any milestone in her children's or grandchildren's lives. She even used to attend her daughter and son-in-law's dog field trials to cheer on her grand-dogs — that is simply who she is. She shows up, fully and without fail, for the people and even the animals she loves.

In all the decades I have known Marilyn — as a team parent, a colleague, and a friend — I have known her to be a kind, caring, and devoted woman. I would be glad to answer any further questions the court may have.

Respectfully,

Cally Redder
4717 Peck Lake Rd, Saranac, MI 48881
616.485.4021
Callyredder@gmail.com

August 30, 2026

To Whom It May Concern:

I am writing on behalf of Marilyn Harp, whom I have known for over 30 years, first as a fellow sports parent and later as a colleague in elementary education.

I first met Marilyn when our daughters played together on their high school tennis team. I was new to the world of high school sports and, frankly, a little unsure of how it all worked. Marilyn was the team parent, and she was the one who showed me the ropes — patiently walking me through everything from match schedules to what was expected of us as sports parents. She did this not just for me, but for any parent who needed a hand. Her willingness to help another parent find her footing, without being asked, told me a great deal about who she was.

Some years later, I came to know Marilyn in an entirely different capacity: as a colleague. I worked as an elementary school teacher at the same school where Marilyn served as the school secretary. It was a school where the vast majority of our students came from low-income households, and the needs in that building went well beyond academics. Marilyn met those needs with unfailing kindness. She was the steady presence at the front of the school — the one who greeted anxious students, calmed worried parents, and made sure the countless small logistics of running a school never fell through the cracks. Teachers relied on her, and so did the children. She treated every person who walked through our doors, adult or child, with dignity and warmth.

Being close in age, we would often discuss the needs of our aging parents. Marilyn was in the office and took the call from my mom in Florida the day my dad died. It was a Monday in March, just after lunch. Marilyn came to my classroom door and walked with me back to the office where I could speak with my mom on the phone in the principal's office. She prepared me for what was to come on our walk and was so kind and understanding. She arranged for another teacher to take my class for the afternoon so I could focus on our needs to get to Florida that day and relay the news to my family. For her kindness, compassion, and caring that day, I will forever be grateful.

In the seasons of my life in which I interacted with Marilyn daily — as a fellow parent learning to navigate high school sports, and as a colleague working alongside her in a school that needed her steadiness — I found her to be generous, dependable, and genuinely caring. She is the kind of person who looks for ways to help, whether that means walking a nervous parent through a new experience or holding an entire school together from behind the front desk.

We have both since retired from school, and our friendship has continued well beyond our working years. We still often cross paths at community events, and it is always a warm reunion. Marilyn greets old friends with the same genuine interest and kindness she has always had, asking after our families and remembering the small details of our lives. That she has kept up these connections long after any professional reason to do so speaks to who she truly is.

Respectfully,

Beth Betts
4675 Peck Lake Rd, Saranac, MI 48881
616.340.0182
bbetts51@gmail.com

Corewell Health

Corewell Health Internal Medicine
- 4069 Lake Dr SE
4069 LAKE DR SE STE 315
GRAND RAPIDS MI 49546-8816
616-267-7700 Fax: 616-267-8705

August 12, 2026

RE: Marilyn Ethel Harp
DOB: 5/15/1952

To Whom It May Concern:

I am writing on behalf of Corewell Health regarding Marilyn Ethel Harp, who has successfully completed the Integrated Behavioral Health (IBH) program through our organization.

I am a Master's of Social Worker within Corewell Health Primary Care Office located at 4069 Lake Drive in Grand Rapids, Michigan. Marilyn engaged in services from July 24th 2025 through October 14th 2025. During this period, the client participated in the following services:

-Biopsychosocial Assessment
-Individual Counseling
-Medication Management
-Coping Skills
-Barriers

Please feel free to call me if you have any questions or need any additional information at 616-267-7700.

Sincerely,
Mackenzie R Dickerson, LMSW
MACKENZIE R Dickerson, LMSW

Corewell Health

Corewell Health Internal Medicine
- 4069 Lake Dr SE
4069 LAKE DR SE STE 315
GRAND RAPIDS MI 49546-8816
616-267-7700 Fax: 616-267-8705

August 13, 2026

RE: Marilyn Ethel Harp
DOB: 5/15/1952

To Whom It May Concern:

I am Dr. Essenberg, a licensed physician practicing at Corewell Health Primary Care. I have been involved in the medical care and treatment of Marilyn Harp since December 7th, 2016.

This letter is provided at the request of my patient for purposes of a court proceeding. The information contained herein is based upon my review of the patient's medical records, clinical evaluations, and ongoing treatment.

Marilyn Harp is currently prescribed Pristiq at a dosage of 100mg 1x/day, Ativan 1mg 2x/day, and Trazodone 50mg 1x/day. This medication was prescribed for the treatment of Generalized Anxiety Disorder and Major Depressive Disorder.

The prescribed dosage was determined based on accepted medical standards, the patient's clinical presentation, medical history, treatment response, and ongoing assessment. In my professional medical opinion, the current dosage is medically appropriate and necessary for the management of the patient's condition.

The dosage has been monitored and adjusted as clinically indicated throughout treatment. Any changes to the medication regimen have been made based on medical necessity and patient safety considerations. Abrupt discontinuation, reduction, or unauthorized modification of this medication may negatively impact the patient's health and could result in worsening symptoms or other adverse medical consequences.

To a reasonable degree of medical certainty, Pristiq, Trazodone and Ativan at the prescribed dosage is consistent with the patient's treatment needs and is being utilized for legitimate medical purposes.

Please note that this letter is intended solely to address the patient's prescribed medication and dosage from a medical perspective. It should not be interpreted as an opinion regarding any legal matters before the Court.

Should additional information be required, and with appropriate patient authorization, I may be contacted at the number listed below.

Please feel free to call me if you have any questions or need any additional information at 616-267-7700.

Sincerely,
Dr. Kristin Essenberg, DO
Dr. Kristin Essenberg, DO

**Lizbeth Deindorfer**
98 Main Street
Saranac, MI 48881
(1616) 706 - 0324
lizdein206@gmail.com

September 19, 2026

To Whom It May Concern,

My name is Beth Deindorfer. I am a retired teacher. I taught in Ionia's elementary schools from 1990 through 2020. During that time, I worked with Marilyn Harp. She was the secretary at Emerson Elementary for several years while I was a third grade teacher there. She was very organized and competent in her role and would go above and beyond to make sure that the teachers were supported and their needs were met. Marilyn displayed care and concern for the students in the building as well. She treated all students and their families with kindness and respect, making sure they felt welcomed and heard.

I also was a first grade teacher for her granddaughter while teaching at Boyce Elementary. Marilyn is a devoted and loving mother to her daughters and a proud, supportive grandmother to their children. She spent many days supporting not just her granddaughter, but helping all of my students while volunteering in my classroom. She had a special place in her heart for the students who struggled to meet learning or behavior expectations and gave them extra love and attention.

In conclusion, I have known Marilyn for over 25 years. She has been a hard working, dependable, and caring support for many administrators, teachers, and students through various roles over many years.

Sincerely,

Lizbeth Deindorfer

August 13, 2026

To Whom It May Concern,

I have known Marilyn for the past four years through college basketball, where she became the most loved "basketball grandma." During that time, I have had the privilege of witnessing firsthand the incredible love, dedication, and devotion she has for her granddaughter, as well as the genuine care she has for the entire team.

Grandma Harp never missed a college basketball tournament, home game, or away game. She and Grandpa Harp would arrive early, excited and ready to support the players. The team always knew Grandma Harp would be in the stands, cheering loudly and proudly—even when a player's own family was unable to attend.

What makes Marilyn so special is that her support extends far beyond simply showing up to games. She made the players feel seen, encouraged, and loved. She celebrated their accomplishments, supported them through difficult moments, and treated every member of the team as though they were part of her own family. Her presence brought warmth and positivity wherever she went.

Over these four years, I have come to know Marilyn as someone with a remarkably generous heart. Her commitment to her granddaughter is beautiful, but what has touched me most is the way she naturally extends that love to others. She has been a constant source of encouragement and support, and her kindness has made a lasting impression on these young women.

Marilyn Harp is the kind of person who shows up—not only physically, but wholeheartedly. She always made homemade chocolate chip cookies to share after each game. Her loyalty, compassion, and unwavering support are qualities that are difficult to put into words, but easy to recognize when you experience them.

I am grateful to have had the opportunity to know Marilyn and to witness the positive impact she has had on her granddaughter, the team, and so many of the people around her.

Sincerely,

Molly LeRoux

Basketball Mom

231-755-0252

Outlook

**Fwd: Letter / Marilyn Harp**

**From** Terese Paletta <tap@ppblawyers.com>
**Date** Thu 8/13/2026 12:42 PM
**To** Sam Conrad <smc@ppblawyers.com>

Another letter for Marilyn
Sent from my iPhone

Begin forwarded message:

> **From:** Colleenmlance <cml10111964@gmail.com>
> **Date:** August 12, 2026 at 9:18:49 PM EDT
> **To:** Terese Paletta <tap@ppblawyers.com>
> **Subject: Letter / Marilyn Harp**

Sent from my iPhone

**Honorable Judge:**

I am writing this letter with great respect for the Court and in the hope that you will consider leniency for Marilyn Harp as you determine her sentence.

I have known Marilyn for more than forty years. I first met her when I worked at the McDonald's in Ionia, Michigan. Marilyn would bring her daughters in for breakfast several times a week, and over the years I came to know her as a mother who deeply loved and cared for her family.

I understand that Marilyn is before the Court because of serious mistakes she has made, and I do not want to minimize the harm that those actions have caused. What she did was wrong, and I believe she understands that. But I also believe that one painful chapter in a person's life should not completely erase the person they have been for the many years before it.

When I think of Marilyn, I don't think first of the charges before the Court. I think of the mother I knew years ago, the woman

who cared for her daughters and later her grandchildren. I think of the kindness and warmth I experienced from her and the person I have known for more than four decades.

At 74 years old, Marilyn is at a stage of life when the consequences of her actions are especially frightening and difficult to face. From what I understand, she is remorseful and is making an effort to repay the money she took. To me, that effort matters. It shows that she is not simply trying to escape responsibility; she is trying to take responsibility for what she has done and make amends as best she can.

I believe Marilyn became overwhelmed by circumstances and felt that she was in too deep and could not see a way out. That does not make her actions right, but I hope the Court can consider the person behind those actions and the circumstances that brought her to this point.

People can be quick to judge someone by the worst thing they have ever done. I hope Marilyn will not be defined solely by this mistake. She has been a mother, grandmother, friend, and member of her community for many years. There are people who still love her, believe there is goodness in her, and want to see her have the opportunity to make things right.

I respectfully ask the Court to consider Marilyn's age, her remorse, her efforts toward restitution, and the many years she has lived as a caring and loving person. If there is an opportunity to impose a sentence that allows her to remain in the community while continuing to repay what she owes and make amends, I sincerely hope the Court will consider it.

I know the Court must consider the seriousness of the offense, and I respect that responsibility. I am simply asking that Marilyn's entire life be considered—not just the mistake that brought her before the Court.

I have known Marilyn for over forty years, and I still believe there is good in her heart. I hope she can be given the chance to prove that she can learn from this, make things right, and spend the years she has ahead of her making better choices.

Thank you for taking the time to read my letter and for considering my perspective on a woman I have known and cared about for most of my adult life.

With sincere respect,

**Colleen Lance**

Outlook

## Fwd: Marilyn Harp

**From** Terese Paletta <tap@ppblawyers.com>
**Date** Wed 8/5/2026 12:06 PM
**To** Sam Conrad <smc@ppblawyers.com>

Please forward Dan's letter below. Thanks,

Begin forwarded message:

**From:** "Dan & Janet Balice" <jdbalice@chartermi.net>
**Subject: Marilyn Harp**
**Date:** August 5, 2026 at 11:26:36 AM EDT
**To:** <tap@ppblawyers.com>

Dear Terese: Enclosed please find a letter regarding Marilyn Harp that I have written for inclusion with any materials to be provided to the Probation Department and/or the Court as the Court determines appropriate action in Marilyn's case.

I have known Marilyn for several decades, and I have always been impressed by her commitment to her family and her willingness to help out in times of need. I knew Marilyn's parents, Glen and Alice Smith, and as they grew old and infirm, Marilyn stepped up to comfort and help them as they grew physically and mentally weak. Her commitment to them was total, and she had a very positive impact on their quality of life as they gradually failed. Similarly, Marilyn was totally devoted to helping her sister, Caroline, as she developed health issues from which she ultimately passed away. Her care for her parents and her sister showed her compassion and dedication to her birth family when they needed her to step up, and I admired her commitment to them in their times of need.

She has also been a wonderful and supportive wife to her husband of 56 years, Mike, and it was always a pleasure to see the two of them around town, with their obvious affection for each other, and their shared sense of humor about their lives, their two children, Jill and Angela, and their three grandchildren. When Mike had heart surgery a year ago, Marilyn again stepped up, helping him through a very tough time with her usual sense of compassion and commitment. Her family is a wonderful group, thanks in large part to Marilyn's love for and commitment to all of them. The bottom line is that since I first met Marilyn when she was working for the Ionia Public Schools, I have admired her commitment to her family, her friends, and the community.

But now I know that the Court has to reconcile Marilyn's lifetime of service, support of her family and friends, and positive impact on the lives of others with the previously unimaginable acts with which she is charged and for which this court must fashion an appropriate sentence. When I learned of Marilyn's actions in her position with Ionia Township, I (along with everyone else) was stunned, and simply couldn't believe the allegations could be true, as this was so contrary to the life and actions that I had observed for many years, but when it turned out the allegations were, in fact, true, I had to come to terms with the facts as alleged.

Actions have consequences, and Marilyn must now deal with the consequences of her actions, but I would ask the Court to take into consideration the many, many good things Marilyn has done in her life when fashioning an appropriate sentence. I have observed a life of service and compassion, and I have seen the positive impact she has had on her family and her friends, and while I know she must face the consequences of her actions, I hope the Court will extend some leniency to her as the Court fashions an appropriate remedy. I have seen the utter devastation she has endured as a result of these charges, and I know that she has engaged in extensive counseling in order to help her deal with her situation and to try to ascertain why she would have acted in this fashion. It is my hope that through counseling, the support of her family, and the payment of restitution, Marilyn can regain some balance and still live a productive and positive life, going forward. I would respectfully ask the Court to consider alternatives to incarceration for Marilyn, such as in-home detention, tether, and community service. Perhaps some good can come out of this if Marilyn can make full restitution and can serve as a cautionary tale to people in similar positions who find themselves tempted to act in a similar fashion. I am hopeful that through counseling and thorough self-examination, Marilyn (and others) may come to understand how this inconceivable act occurred, and that by doing so, others may recognize similar predilections and avoid similar outcomes.

I certainly understand the seriousness of Marilyn's actions, and I also understand how disappointed and angered people feel about what happened, as I had some of those same feelings when I found out what had occurred. On reflection, however, my feelings were tempered by taking into consideration all of the good things Marilyn had done in her life, and by the realization that through therapeutic intervention, Marilyn, and others, may be able to gain insight into why this happened, and such insight may help not only Marilyn, but others in similar positions. I know that restitution is critical, and I know that Marilyn is doing everything possible to make full restitution, as she should. I would

respectfully ask the Court to consider alternatives to incarceration, as I genuinely fear that at her age and in her current condition, incarceration may not be survivable.

I thank the Court for any consideration they may give to my suggestions, and for trying to fashion an appropriate sentence under these circumstances.

Dan Balice

Triple E Counseling Services
911 4th Avenue Suite 104 Lake Odessa, MI 48849
Phone Number: 616-210-3300
Fax Number: 616-210-3447
Email: TripleECounseling@therapyemail.com

August 4 2026

To Whom It May Concern:

Marilyn Harp has been engaged in outpatient therapy services with this clinician since 11/04/2025. During this time, Marilyn has worked toward her treatment goals which include the following: "Making myself feel better about what I have done and being able to live with it. My anxiety about it. Family and if they still want me in their lives." (Marilyn)

Marilyn has engaged in therapy biweekly since the time that she started services with periodic times of attending weekly. There have been no concerns with a lack of participation in treatment. Marilyn does well to identify and advocate for weekly sessions as needed and displays good insight to the needs surrounding her mental health. Marilyn engages well in treatment and has worked hard to explore and process through past events in her life while also applying skills gained in treatment to support her mental health.

Please let me know if you have any other questions or concerns.

Thank you,

LMSW

Ashley Peer LMSW

911 4th Ave. Suite 101 Lake Odessa, MI 48849

Phone: 616-737-1332

Email: ashleyp.tecs@therapyemail.com

Outlook

**Fw: Letter ofSupport for Marilyn Harp**

**From** Terese Paletta <tap@ppblawyers.com>
**Date** Mon 8/3/2026 11:05 AM
**To** Sam Conrad <smc@ppblawyers.com>

Letter for Marilyn

**From:** Scott Baker <bakeracing13@yahoo.com>
**Sent:** Monday, August 3, 2026 10:25 AM
**To:** Terese Paletta <tap@ppblawyers.com>
**Subject:** Letter ofSupport for Marilyn Harp

To Whom It May Concern,

I am writing to offer my sincere recommendation and support for Marilyn Harp, a long-standing resident of our community and someone I have known closely for several years. I appreciate the opportunity to provide insight into her character as she moves through the federal judicial process.

During the years I have known Marilyn, she has consistently demonstrated responsibility, reliability, and genuine care for the people around her. She is an engaged community member who has always made efforts to contribute positively, whether by supporting neighbors, participating in local events, school events or simply being someone, others know they can depend on during difficult times. She played an important role in my life when I lost my mother and was very grateful for her support as it was one of the most difficult times in my life.

While she is currently facing charges, I believe it is important to acknowledge her long-term behavior and the positive role she has played within our community. She has expressed sincere remorse and understanding regarding her circumstances, and she has shown a clear commitment to cooperating fully with the process ahead. Throughout this challenging period, she has remained focused on making changes that will help her move forward in a stable, constructive direction.

I am confident that Marilyn has strong potential for rehabilitation. She has a solid support system and a sincere willingness to participate in any programming, guidance, or oversight deemed appropriate. I believe she would benefit greatly from a probation plan that balances accountability with opportunities for continued personal development.

Thank you for taking the time to consider this letter. I respectfully ask that you take her community ties, her demonstrated character, and her commitment to personal improvement into account. I am available to provide any additional information the Court may need.

Respectfully,

Scott Baker

1088 Jefferson Rd.
Ionia, MI 48846
616-902-6055
bakeracing13@yahoo.com

To whom it may concern, My name is Julius Daus and I work as an Electrician for the IBEW Local Union 665 in Lansing. Marilyn Harp is the Grandma of my girlfriend, Molly, who I have been dating since high school. I first met Marylin six years ago at my girlfriend Molly's Highschool basketball game. She was very outgoing and polite and introduced herself to me right away and asked me questions about myself and my relationship with her granddaughter. I could tell she was a very proud Grandma.

Ever since then she welcomed me into the family right away, every family gathering I attended at her and her husband Mike's house I always felt comfortable. Marilyn would make big meals for the family and always make sure everyone was taken care of. Once my girlfriend began going to college and playing collegiate basketball Marilyn was her biggest cheerleader and never missed a game even several hours away in a different state. She also made an effort to connect with Molly's teammates and friends to make sure they felt supported on those far away games as well.

Throughout the time I have known Marilyn, I have consistently seen her put others before herself. For example, usually once or twice a week she would drive from Ionia to Alma College where Molly attends school to do her laundry and take her baked goods. She also always was thinking of me and bringing me food and making sure I didn't need anything wherever we were with the family. Her family and especially her grandkids are her pride and joy which motivates her in life.

I felt it was important to share my firsthand experiences because they reflect the caring and supportive person I have known over the past six years. I understand the seriousness of the situation and what the court must rule on and I respect the court's decision and authority. I just wanted to write this letter so she may be viewed as I know her and not just by the situation in question. Thank you for your time and consideration of this letter.

Outlook

## Fwd: Marilyn Harp

**From** Deborah Phillips <debphillips205@comcast.net>
**Date** Tue 8/4/2026 2:13 PM
**To** Brittany Flinn <bkf@ppblawyers.com>

>
>
>
> Dear Ms. Paletta,
>
> I have known Marilyn Smith Harp for sixty years. She is the sister of my dear friend who died a few years ago.
>
> I know Marilyn to be a good hearted, kind hearted, caring, helpful person. She has been attentive to the needs of her immediate family, including her sister, and extended family - and loves them dearly.
>
> These traits are not false, nor are they a front. They are sincere.
>
> Please submit this to the Court and request it to take into account her fine traits.
>
> Respectfully,
>
> Deborah Phillips
>
> 205 Samuel Oaks Drive
> Okemos, Michigan
> 48864
>
>

Angela Lamphere
5789 Stedman Rd.
Ionia, MI 48846
616-902-2824
thelampheres@yahoo.com

August 3, 2026

United States District Court
Office of Probation and Pretrial Services

Re: Letter of Support for Marilyn Harp

To Whom It May Concern,

I am writing to offer my sincere recommendation and support for Marilyn Harp as she stands before the Court. I have had the opportunity to observe her character, her dedication to our family, and her commitment to improving her circumstances, and I believe it is important to share these observations with you.

Over the course of my life my mother has consistently demonstrated herself as a deeply devoted and actively involved mother with her family and the community she lives in. Her family is the center of her daily life, and she has taken meaningful steps to ensure our well-being, stability, and emotional security. Whether navigating school responsibilities, medical needs, or the everyday challenges of parenting, she has shown patience, responsibility, unwavering care and endless love during my childhood.

While she is currently facing legal charges, I have observed that she has accepted responsibility for her situation and has expressed a genuine desire to move forward in a positive and productive direction. I am a firm believer my mom was a lull in her life and facing challenges mentally but was scared to seek help. She has shown respect for the process and an understanding of the seriousness of her circumstances. Most importantly, she has been proactive in seeking ways to better herself— spiritually, emotionally, and mentally.

Over the last year my mother has been facing significant ongoing emotional distress and suicidal attempts and thoughts which bring great concern to our family. She has expressed feelings of hopelessness at times and has struggled with thoughts that reflect the seriousness of her mental-health needs. Despite these difficulties, she has shown willingness to seek appropriate support, and she has expressed a clear desire to engage with professional services that can help her navigate these issues in a healthy and constructive way. Additionally, having a very close relationship with her family and receiving endless support from her family members has played a huge role in being successful in coping with this difficult situation and has refrained her from taking her life.

It is my belief that with continued structure, guidance, and access to mental-health resources, being surrounded in her own home with family support, I feel would provide my mother with strong potential for progress and rehabilitation. Her motivation to improve remains rooted in her love for her husband, children, sons-in-law, and grandchildren. As she consistently communicates her desire to be present and well for them.

Thank you for taking the time to consider this letter. I respectfully ask that you consider her devotion as a mother, her efforts toward self-improvement, and the positive potential she carries as you make decisions regarding her case. Should you need any additional information, I would be glad to provide it.

Respectfully,

Angela Lamphere

Angela Lamphere

**Dear Ms. Paletta,**

My name is Katelyn Lamphere, and I am Marilyn Harp's youngest granddaughter. I wanted to take a moment to share what my grandmother means to me and how deeply this situation has affected both our family and me personally.

I truly believe, through the grace of God, that what happened was a mistake. We are all human, and every person is capable of making mistakes. While I understand that mistakes have consequences, I also believe that people deserve to be seen for the entirety of their character rather than being defined by one difficult chapter in their lives.

Watching my grandmother go through this has been one of the most emotionally difficult experiences I have ever faced. My grandmother has always been one of the kindest, most selfless people I have ever known. She has consistently put the needs of others before her own, often sacrificing her own time, energy, and resources simply to help someone else. Anyone who truly knows her knows that her heart has always been centered on caring for others.

She has been an incredibly important part of my life since I was just six weeks old, when my mother returned to work after maternity leave. My grandmother helped raise me. Every summer growing up, I spent nearly every day with her. She picked me up from school, took care of me after school, and brought me safely home. Some of my most treasured childhood memories were made with her, and I cannot imagine my life without the love, guidance, and support she has given me. Aside from my parents, there is no one who has had a greater impact on the person I have become.

This situation began during the summer before I left for college, making an already difficult transition even harder. Starting college was one of the biggest changes of my life, and at the same time I was carrying the emotional weight of wondering what would happen to my grandmother. Every day, I prayed that God would restore her, strengthen her, and bring peace to our family. The uncertainty of not knowing whether I would lose someone who has been such a constant presence in my life has been heartbreaking. It has been an emotional burden that is difficult to put into words.

I understand that the circumstances surrounding this case are serious, and I am not attempting to excuse what occurred. My grandmother has acknowledged that mistakes were made, and I know she understands that she must face the consequences of her actions. What I hope is that, in addition to considering the facts of this case, you will also consider the woman she has been throughout her life. She is not defined by this one mistake. She is someone who has spent decades loving, serving, and helping others, and I know she carries genuine remorse for what has happened.

As I write this letter, I continue to pray that God will guide everyone involved and provide wisdom, mercy, and compassion throughout this process. I also pray that my grandmother finds peace and strength as she faces what lies ahead.

Thank you for taking the time to read my letter and for considering my perspective. I sincerely appreciate your time, your compassion, and the work you do.

Best,

**Katelyn Lamphere**

**Dear Ms. Paletta,**

My name is Lucas Wandell, and I am Katelyn Lamphere's fiancé. Although I am not related to Marilyn Harp by blood, I have had the privilege of getting to know her and witness the incredible person she is.

From the time I have known Marilyn, she has always treated me with kindness, respect, and genuine care. She welcomed me into her family with open arms from the very beginning and has always made me feel like I belonged. She has treated me as if I were one of her own grandchildren, and that is something I will always be grateful for. To this day, I proudly consider Marilyn to be my grandmother because of the wonderful person she is. Family is not always determined by blood, but by the love, compassion, and support someone shows you, and Marilyn has given me all of those things. She has made a lasting impact on my life, and I will forever cherish the relationship we have.

She is the type of person who would give the shirt off her back to help someone else. Throughout the time I have known her, I have witnessed her kindness, generosity, and willingness to put the needs of others before her own. She has spent her life caring for those around her, and I truly believe that is the person she should be remembered as.

Watching Marilyn and her family go through this has been heartbreaking. I have seen firsthand how much this situation has affected Katelyn. Marilyn has been one of the most important people in her life, helping raise her from the time she was just six weeks old. Seeing someone she loves so deeply face this has taken an emotional toll on her, and it has been difficult to watch her carry that pain.

I understand that mistakes have consequences, and I am not writing this letter to excuse what happened. Rather, I hope to offer perspective on the character of the woman I have come to know. I truly believe this was a mistake and not a reflection of the person Marilyn has been throughout her life. We are all human, and none of us are without fault. What defines a person is not simply a mistake they have made, but how they respond to it and the life they have lived before and after it.

I know Marilyn recognizes the seriousness of the situation and accepts that she must face the consequences of her actions. I have also seen the remorse she carries and the emotional burden this has placed on her. Despite everything she has been facing, she continues to care deeply for those around her.

As a man of faith, I believe in God's grace, forgiveness, and the opportunity for redemption. Throughout this difficult time, I have continued to pray for Marilyn and for everyone involved. My prayer is that she is shown compassion and that her lifetime of kindness, generosity, and service to others will be taken into consideration alongside the circumstances of this case.

Thank you for taking the time to read my letter and consider my perspective. I sincerely appreciate your time, your dedication, and your thoughtful consideration.

Respectfully,

**Lucas Wandell**

August 2, 2026

To whom it may concern:

I am Jill C. Deurloo, daughter to Marilyn E. Harp. I am writing today to share about my mother. My mom has a huge heart. She was a stay at home mom until my sister went to school full time and then went to work at the school so we would all have the same schedule. She always puts her family first. She supported us in whatever we wanted to play or try. She was our biggest cheerleader. She loves her family.

When her parents needed assistance she helped them. As they aged she cared for them and was there for them until God called them home. She also cared for her mother-in-law until God called her home. Her sister was diagnosed with breast cancer and she helped and cared for her during her illness until God called her home. She continues to check in on her brother-in-law on his well-being since her sister passed away. She supported her sister-in-law who recently has been called home.

Recently my father had open heart surgery and she cares for him. She goes to all his appointments and watches over him to make sure he has his medicine, meals, and watches over his diabetes plan.

My mom's passion is her love for others. She has a gentle soul and a heart as big as the world. She loves her grandchildren and spending time with them. She is their biggest fan.

Please feel free to contact me if you wish to speak with me further. I have provided my contact information for you.

Jill C. Deurloo
517-231-1933
deurloo1996@gmail.com

*Jill C. Deurloo*

Dear Ms. Paletta,

I have known Marilyn Harp since our children were in school together in Ionia. We were both very involved as parents, especially when our kids were in high school. Our daughter, Jennifer, and Mike and Marilyn's daughter, Jill, both graduated in 1993.

Even though we both remained in the Ionia area, I lost touch with Marilyn until a few months ago. Her sister-in-law, Yvonne Elvert, was a member of the church I pastor, LeValley Global Methodist Church. Yvonne's niece, Marilyn's daughter, Angela, and her family began attending church and Marilyn sporadically attended, as well. Following Yvonne's death in May, Marilyn began attending regularly. Yvonne had encouraged her to do so.

I was surprised to learn of Marilyn's arrest. I knew she had been involved in township government for years, but until news of her alleged embezzlement, I had no reason to doubt her integrity. I am not denying her guilt, but I do wonder why she would do what she did. She is dedicated to her family and is very involved in the lives and activities of both her children and grandchildren.

Even though I believe in punishment for the mistakes we make, I write this letter with hope that Marilyn will be treated with leniency, especially because of her age, but also for empathy for her family.

Thank you for representing Marilyn in this very difficult case.

Sincerely,

Pastor Nancy Patera

Outlook

**Fwd: Subject: Letter regarding Marilyn Harp**

**From** Terese Paletta <tap@ppblawyers.com>
**Date** Mon 8/3/2026 10:52 AM
**To** Sam Conrad <smc@ppblawyers.com>

Letter for Marilyn

Begin forwarded message:

**From:** Mary Griffin <griffmiff7@gmail.com>
**Subject: Subject: Letter regarding Marilyn Harp**
**Date:** August 2, 2026 at 5:55:52 PM EDT
**To:** tap@ppblawyers.com

Dear Attorney Paletta,

I am writing to express my support for Marilyn Harp. I have known Marilyn since 1993, when we met in Ionia getting our hair cut at the same salon.

Over the years, I have grown to know Marilyn and her family. I did the calligraphy for both of her daughters' weddings and worked alongside her younger daughter, Angela, for many years at the Bellamy Creek Correctional Facility. Through these connections, I spent time with Marilyn and her husband, Mike. During this period, Marilyn dedicated herself to caring for her elderly mother, her sister during her battle with cancer, and later, her brother-in-law. She is a deeply devoted wife, sister, mother, grandmother, and friend who prioritizes her family.

While I am aware of the serious charges Marilyn is currently facing, I know she is a good person who deeply regrets her actions. I respectfully ask that you consider these factors and grant her a lighter penalty.

Thank you for your time and consideration.

Respectfully,

Mary "Miffer" Griffin
1807 Horizon Drive
Ionia, MI 48846
(616) 902-3183